




**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 31, 2009** **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ALTON MERLE CURRY AND | § | CASE NO. 05-21293-RLJ-7 |
| JUDY REBECCA CURRY, | § | |
| | § | |
| DEBTORS | § | |

**MEMORANDUM OPINION**

In this chapter 7 case, the Court addresses the objections of the debtors, Alton and Judy Curry, to the following proofs of claim: claim 5 filed by Advantage Assets, Inc. ("Advantage"); claims 6 and 7 filed by Worldwide Asset Purchasing, LLC ("Worldwide"); and claims 8, 9, and 10 filed by PRA Receivables Management, LLC ("PRA Receivables").[1] With respect to each claim, the objection is made on the basis that the claim is not supported with sufficient

---

[1] The proofs of claim are here identified by the claim number that is assigned to the claim in the Court's claims docket, which, in turn, represents the chronological order in which the claim was filed with the Court.

documentation to establish its prima facie validity as required by Bankruptcy Rule 3001(c). Advantage, Worldwide, and PRA Receivables did not respond to the debtors' objections and did not appear at the hearing held on the claim objections. The chapter 7 case trustee, Kent Ries, did respond to the objections and opposes disallowance of the claims. The trustee challenges the debtors' standing to object to creditor claims, contends the objections are premature and, regardless, believes the claims are valid claims.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). This Memorandum Opinion and Order contains the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

**Background**

This is an unusual bankruptcy case. The debtors filed this chapter 7 case on September 21, 2005. The case was initially determined to be a "no-asset" case, meaning there were no available assets in the bankruptcy estate with which to make distributions to creditors. Creditors were therefore provided with notice directing them not to file proofs of claim. The Currys each received their discharge and the case was closed on January 9, 2006. The Currys had, however, failed to include in their schedule of assets a claim that they owned against Merck & Co. for injuries resulting from Mr. Curry's use of the drug Vioxx. According to the trustee, the Vioxx claim potentially arose several years prior to the filing of the bankruptcy case.[2] The debtors' Vioxx claim was included within a group of Vioxx claims pending before the United States District Court in the Eastern District of Louisiana that resulted in a settlement approved by such

[2]There was actually no evidence provided on this point, but there appears to be no real dispute between the parties that the claim existed prior to the filing of the bankruptcy case.

court in November 2007. The attorneys representing the Currys in the district court action notified Ries in October 2008 of the debtors' interest in a Vioxx claim and that their share of the settlement was in excess of $255,000.

After learning of the Vioxx claim, Ries filed a motion to reopen the bankruptcy case on November 5, 2008; the case was reopened by the Court's order of November 10, 2008. Ries was appointed as trustee in the reopened case and notice was provided to all creditors that assets had been recovered and that they had until February 11, 2009, to file proofs of claim in the case. Ries reviewed the claims filed with the Court and objected to one secured claim that was filed as a claim secured by the debtors' homestead. At least nine other claims were filed before the February 11, 2009 bar date, all of which were filed as unsecured claims; the aggregate amount of these unsecured claims is $66,920.16.[3] On February 16, 2009, the debtors filed objections to claims 1, 3, 4, 5, 6, 7, 8, 9, and 10.[4] The debtors, in effect, objected to all but one claim that had been filed after notice was provided of the recovery of assets in the case.

The debtors' schedules, as originally filed, listed undisputed, liquidated, and non-contingent unsecured claims of $304,567.17; the schedules listed secured claims of $508,073.87.[5]

The sole asset in this bankruptcy case is the Vioxx claim, which, as noted above, has a gross estimated value of an amount in excess of $255,000. After netting out attorney's fees incurred by special counsel approved by this Court for purposes of pursuing the Vioxx claim,

---

[3]At least six more claims have been filed, all of which were filed after the bar date. The Court notes, however, that the Bankruptcy Code does, under certain circumstances that may exist here, provide for distributions on "tardily" filed claims. *See* 11 U.S.C. § 726(a).

[4]The objections to claims 1, 3, and 4 were not considered at the hearing on this matter.

[5]The Court takes judicial notice of the debtors' schedules filed in the case.

and other expenses, the trustee, Ries, estimates that the estate will recover approximately $174,000. The trustee has, to date, received approximately $70,000 from the settlement with the expectation that the balance of the recovery will be paid in December 2009 or early 2010. The estate will therefore remain open for several more months to allow for recovery of the balance of the funds derived from the Vioxx claim.

(1) Claim 5 filed by Advantage

Claim 5 of Advantage, filed as an unsecured claim in the amount of $11,061.95, was filed on Official Form B10 and states that "money loaned" is the basis of the claim. Included with the Form B10 is a copy of a summary information document of "LTD FIN SVCS" that identifies the debtor Alton M. Curry with a social security number and account number (last four digits are 0995), and an account balance reflecting a principal balance of $9,977.31, and interest accrued of $1,084.64.

(2) Claims 6 and 7 filed by Worldwide

Claims 6 and 7 of Worldwide are each filed on Official Form B10 and recite the following regarding the name of the creditor: "Worldwide Asset Purchasing, LLC; Assignee: MBNA America Bank, NA." Claim 6 recites an amount claimed as an unsecured claim of $11,909.76; claim 7 recites an amount claimed as an unsecured claim of $18,973.70. Both claims include, as attachments, a "Declaration of Mary Beth Corcoran Re: Missing Documentation"; a single page of a computer screen shot; an "Account Statement"; a "Bill of Sale and Assignment of Loans," dated March 16, 2004; and a second Bill of Sale, dated May 25, 2004.

The Declaration of Mary Beth Corcoran that is attached to claim 6 recites that on March 9, 2004, Worldwide Asset Purchasing, LLC "purchased this credit card debt and became assignee

to MBNA America Bank, NA" and that, based on the books and records of Worldwide, the debtor is indebted to Worldwide for the principal amount of $11,909.76. It further recites that, to evidence the indebtedness, attached to the declaration is a screen print from Worldwide's books and records. The declaration is dated June 1, 2009. The Declaration of Mary Beth Corcoran that is attached to claim 7 recites that "[o]n or about 05/29/2004, Worldwide Asset Purchasing, LLC purchased this credit card debt and became assignee to MBNA America Bank, NA." It further states that based on the books and records of Worldwide, the debtor is indebted to Worldwide in the principal amount of $18,973.70. Just as with the declaration to claim 6, the declaration to claim 7 states that attached to the declaration is a screen print from Worldwide's books and records.

The copies of the screen prints identify the debtor Alton Curry, the claim amount, the creditor as MBNA America Bank, and the last four digits of the account number as 3612 for claim 6 and 3014 for claim 7.

The Account Statements for each claim recite that the statement "was prepared by Worldwide Asset Purchasing, LLC, based on the furnished business records of MBNA America Bank, NA." They each identify MBNA America Bank, NA as the original issuer, the unpaid balance amount, the interest rate, and the account number -- 3532 for claim 6 and 7449 for claim 7.

The Bill of Sale and Assignment of Loans with respect to claim 6 identifies the assignor as MBNA America, NA and recites that it assigns to CACV of Colorado, LLC the assignor's rights to each of the loans identified in the loan schedule attached thereto. This document is dated March 16, 2004, and no loan schedule is attached to it. The second Bill of Sale to claim 6 recites

that the assignor is CACV of Colorado, LLC which assigns certain assets to "Buyer," without specifically identifying the buyer, although it is presumed that the buyer is Worldwide Asset Purchasing, LLC as the Bill of Sale recites that the assignment is made pursuant to an Accounts Sale Agreement between CACV and Worldwide. This document states it was executed on May 25, 2004, with a "File Transfer Date" of March 9, 2004. It is signed by a representative of CACV of Colorado, LLC, with an acknowledgment stating that it is acknowledged on May 25, 2004, though the acknowledgment does not specifically identify the person signing the document.

The Bill of Sale and Assignment of Loans with respect to claim 7 identifies the assignor as MBNA America Bank, NA and that it assigns its interest to certain accounts to CACV of Colorado, LLC. As with claim 6, this bill of sale refers to the assigned accounts as identified in a loan schedule that is not attached to the bill of sale. The Bill of Sale and Assignment of Loans is dated July 20,2004. The second Bill of Sale attached to claim 7 is identical to the second bill of sale included with claim 6, but recites that it was executed on July 21, 2004, with a file transfer date of June 8, 2004.

(3) Claims 8, 9, and 10 filed by PRA Receivables

Save for the amounts of each claim, claims 8, 9, and 10 are the same. Claim 8 is for $4,025.73, claim 9 is for $9,028.96, and claim 10 is for $4,751.69. They are each filed on Form B10, the standard form for use in filing proofs of claim. They each contain a "Supplemental Account Summary" which reiterates certain information contained on the proof of claim form itself, but adds, in each instance, that the account was purchased from a third-party and provides the date of the purchase. The summary recites that the information contained on the summary is derived from the "information contained in the account database of PRA . . ." and that PRA has

verified the balance amount set forth on the proof of claim. The claims do not provide any documentation of either the claim or the transfer of the claim.

**Discussion**

There are two issues before the Court: (1) whether, given the particular circumstances of this case, the debtors have standing to prosecute objections to claims of unsecured creditors; (2) if the debtors do have standing to raise such objections, are the claims here, as represented by the proofs of claim, entitled to prima facie validity under the Rules of Bankruptcy Procedure?

(1) The debtors' standing to object to the proofs of claim.

Section 502(a) states that a claim is allowed unless a "party in interest" objects. 11 U.S.C. § 502(a). While a "party in interest" has standing to object to claims, the Code does not define "party in interest." *See Caserta v. Tobin*, 175 B.R. 773, 774 (S.D. Fla. 1994). In the chapter 7 context, a trustee typically objects to claims. *See In re Toms*, 229 B.R. 646, 650 (Bankr. E.D. Penn. 1999). This is based on the trustee's statutory duty to examine claims, and, if necessary, object to improper claims. § 704(a)(5); *see In re Morgan*, No. 05-34981-SGJ-7, 2007 WL 2669341, *3 (Bankr. N.D. Tex. Sept. 6, 2007). Because of this statutory duty, most courts prohibit other parties from objecting to claims. *Id.* Courts prohibit debtors from objecting to claims because, in most chapter 7 cases, debtors have no pecuniary interest in doing so. *Id.*; *but see*, *Mulligan v. Sobiech*, 131 B.R. 917, 920 (S.D.N.Y. 1991) (citing *Collier on Bankruptcy* for the proposition that debtors qualify as a "party in interest").

Courts have created two exceptions to the general rule that a debtor cannot object to claims. *Id.*; *In re Toms*, 229 B.R. at 650-51; *Caserta*, 175 B.R. at 775. First, a debtor has standing to object if the debtor has a pecuniary interest in the outcome of the claim objection. *In*

*re Morgan*, 2007 WL 2669341, at *4. Second, a debtor may object if either no trustee has been appointed, or the trustee has unjustifiably refused to object to a claim. *Id.* Because, in the case *sub judice*, a trustee has been appointed, and there has been no allegation that the trustee has unjustifiably refused to pursue a claim objection, the debtors have standing if they have a pecuniary interest in the outcome of the claim objections. *See id.*

Typically, a debtor has a pecuniary interest where the estate potentially has a surplus of assets that will result in a distribution back to the debtor. *See id.* Courts have also held that a debtor has a pecuniary interest in a claim objection if the sustained claim objection will pay more towards a non-discharged debt. *Mulligan*, 131 B.R. at 920. A debtor has a pecuniary interest in the objection of a claim that may be non-dischargeable. *In re Toms*, 229 B.R. at 651. Finally, if a sustained objection will deny a creditor standing to seek appellate review of a prior ruling regarding the debtor's discharge, then the debtor has standing to object. *In re Morgan*, 2007 WL 2669341, at * 4.

Courts have not specified how to calculate whether a surplus exists in the estate. Some courts have simply looked to the debtor's schedules to determine if a surplus exists. *See In re Watson*, No. 03-13355, 2004 WL 3244420, *1 (Bankr. M.D. La. Sept. 29, 2004) ("The schedules indicate that this will not be a surplus case, because the debtor's liabilities are greater that [sic] his assets…"); *In re Toms*, 229 B.R. at 651 ("the debtors' bankruptcy schedules … demonstrate that there will be no dividends payable to their unsecured creditors"); *Caserta*, 175 B.R. at 775 ("The estate will have no surplus that would give Caserta a pecuniary interest. Caserta filed this as a no-asset case with aggregate claims of approximately $7 million."). The *Morgan* court considered the claims register, the trustee's report of assets, and the fact that the trustee hired accountants to

investigate the assets of the debtor. *Morgan*, 2007 WL 2669341, at *4. The *Morgan* court concluded that given the uncertainty of total assets and claims, the debtor held a pecuniary interest in the outcome of the claim objection. *Id.*[6]

What may be inferred from these opinions is two things: first, the schedules alone might be a sufficient basis to determine that no surplus exists if the debtor does not contest such conclusion, *see In re Watson*, 2004 WL 3244420, at *1 (debtor did not dispute the lack of a surplus based on the schedules alone); *Caserta*, 175 B.R. at 775 (same), and second, standing may still exist even if, based on the current facts, it is uncertain that a surplus will exist at the end of the case. *See Morgan*, 2007 WL 2669341, at *4 (stating that debtor has a potential pecuniary interest although total amount of assets and claims were uncertain).

The distribution process itself supports the idea that basing the determination of a surplus on schedules alone is insufficient. Section 726(a) provides the method by which a trustee distributes property of the estate. § 726(a). The trustee makes distributions to only those parties that file proofs of claim, whether timely or tardily. *Id.* As a result, even though the debtor's schedules may reflect aggregate debts of an amount greater than the value of estate assets, a surplus can arise if the value of estate assets exceeds the aggregate amount of the *filed* claims. *Id*.

In the case at hand, the Court is satisfied that the debtors have a pecuniary interest in the outcome of these claim objections. *See Morgan*, 2007 WL 2669341, at *4. The trustee, Ries,

---

[6]It should be noted, however, that the court also found that the debtor had a pecuniary interest based upon another reason. Earlier in the case, the court held that the debtor could receive a discharge. A creditor appealed this ruling. The debtor objected to this creditor's claim in hopes that disallowance of the claim would remove the creditor's standing to appeal the discharge ruling. The *Morgan* court held that this gave the debtor a pecuniary interest in the claim objection. *Morgan*, 2007 WL 2669341, at *4.

reopened the case once he received notice of the asset. The estimated value of the asset is approximately $170,000, of which approximately $70,000 has been received by the trustee. Currently, as of July 1, 2009, the claims register reflects total unsecured claims of $126,350.02. The total amount of assets and claims are, to a degree, still conditional and unliquidated. From the facts as they presently exist, however, the Court can easily conclude that a surplus and thus a distribution back to the debtors is highly likely. The debtors have standing to object to the claims here. *See id.*

(2) Prima facie validity of claims.

This Court has previously discussed the basic requirements that must be satisfied for a proof of claim to be accorded prima facie validity. *In re White*, No. 06-50247-RLJ-13, 2008 WL 269897 at *3-6 (Bankr. N.D. Tex. January 29, 2008). In *White*, the Court stated as follows:

> A proof of claim is a written statement setting forth a creditor's claim against the bankruptcy estate. Bankruptcy Rule 3001(a). The written statement shall conform substantially to the appropriate official form. *Id. See also In re Armstrong*, 320 B.R. 97, 103 (Bankr. N.D. Tex. 2005). When a claim is based on a writing, the original or a duplicate shall be filed with the proof of claim. Bankruptcy Rule 3001(c). If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim. *Id.* Official Form 10, for a proof of claim, underscores the rule as it provides that a copy of the supporting documents for the claim must be attached to the proof of claim. *See In re Armstrong*, 320 B.R. at 103. A summary can be used if the supporting documents are too voluminous. *Id.* If the claim includes pre-petition interest, attorney's fees, or other charges, a statement providing a breakdown of the elements of the claim is required. *Id. If the creditor is an assignee of the debtor's original creditor, the filing creditor must attach a copy of the assignment and sufficient other information to evidence the filing creditor's ownership of the claim. Id.* at 106. If, for example, a credit card account was assigned or transferred to the claim-filing creditor, such creditor should attach a copy of the assignment and sufficient other documentation to identify the original credit card account. *Id.*
>
> If the proof of claim is timely filed with the court and is in the form of Official Form 10, or a form that substantially conforms to Official Form 10, the basic

> requirements for a proof of claim under Bankruptcy Rule 3001 will be satisfied.[5] If a proof of claim is filed in the proper form and has attached to it copies of the required documents, it is deemed prima facie valid in the amount claimed. Bankruptcy Rule 3001(f). A failure to fully comply with Rule 3001 by, for example, failing to include certain required documents with the proof of claim, will result in a loss of the proof of claim's prima facie validity, but it will not necessarily result in disallowance of the claim. *In re Armstrong*, 320 B.R. at 104.
>
> [5] Bankruptcy Rule 3001 requires that a proof of claim (1) be in writing; (2) make demand on the debtor's estate; (3) express the intent to hold the debtor liable for the debt; (4) be properly filed; and (5) be based upon facts which would allow, as a matter of equity, to have document accepted as a proof of claim. *In re Armstrong*, 320 B.R. at 103-104.

*Id*. at 3 (emphasis added).

The Court provided further explanation concerning the requirements for a creditor whose claim was originally owned by a different, scheduled creditor. *Id*. at *3. While a copy of the assignment is needed, the proof of assignment does not necessarily have to show an assignment from the scheduled creditor to the claimant. *Id*. at *5 (citing *In re Rochester*, No. 03-32184-BJH-13, 2005 WL 3670877, at *5-7 (Bankr. N.D. Tex. May 24, 2005)). The *Rochester* court identified three categories of assignments that may or may not be sufficient. *In re Rochester*, 2005 WL 3670877, at *5. The first category concerns a proof of claim accompanied with an assignment document under which the assignor is the creditor listed on the debtor's schedules and the assignee is the claimant. *Id*. If such an assignment does not specifically identify the specific account at issue, other documentation, such as an account statement that identifies the account, may suffice to establish the claimant's ownership of the claim. *Id*.

The second category concerns a proof of claim with a blanket assignment from an assignor that is *not* a creditor listed on the debtor's schedules, but other documents included with the claim establish a link back to the scheduled creditor. *Id*. at *6. Such documentation may also establish that the claimant is the present holder of the claim. *Id*.

The third category concerns a proof of claim with a blanket assignment from an assignor that is not a scheduled creditor, and other documents with the claim do not establish a link back to a scheduled creditor. *Id.* at *7. Such documentation is insufficient to establish that the claimant is the holder of the claim. *Id.* If the documents do not prove an assignment to the claimant, the claim will not be accorded prima facie validity and will be disallowed upon proper objection. *See White*, 2008 WL 269897, at *6.

The trustee, Ries, contends that the equities strongly favor allowance of the claims here despite technical deficiencies in the proofs of claim and despite the debtors' objections to the claims. In this regard, the trustee is satisfied that the claim listed in the debtors' Schedule F for MBNA in the amount of $10,720.40 (account number 0995) represents the same claim as claim 5; that the claim listed in Schedule F for MBNA in the amount of $14,283.04 (account number 3532) represents the same claim as claim 6; that the claim listed in Schedule F for Monogram Bank in the amount of $23,261.59 (account number 7449) represents the same claim as claim 7; that the claim listed in Schedule F for Fleet in the amount of $5,825.49 (account number 5943) represents the same claim as claim number 8; that the claim under Schedule F for Chase in the amount of $9,840.20 (account number 0070) represents the same claim as claim number 9; and the listed claim of MBNA in the amount of $5,927.09 (account number 1837) represents the same claim as claim number 10. *See* Trustee's Ex. 12.

The trustee, in effect, contends that the debtors are not proceeding in good faith by objecting to the claims: the debtors failed to list the Vioxx claim as an asset; they did not inform the trustee of the Vioxx claim; the claims listed in their schedules, which the trustee has matched to the proofs of claim, are not disputed by the debtors; debtors' counsel's fee is based on the

percentage of claims disallowed by the Court; the objections are technical and procedural and not substantive; and three years lapsed before creditors were provided with notice that assets had been recovered and claims could be filed. In short, the disallowance of the claims is not, in the trustee's view, fair and equitable.

The Court agrees with the trustee that the equities do not favor the debtors. The problem is that the equities have no real bearing on the specific claims objected to. Advantage, Worldwide, and PRA Receivables each obviously received the notice that assets had been recovered. They each filed a proof of claim; they are each aware, presumably, that their claims have been objected to and, despite this, elected not to respond to the objection or appear at the hearing held on the claims objections. The equities simply do not play a role in the Court's decision on whether the claim objections are valid or not.

Here, the debtors have objected to claims 5, 6, 7, 8, 9, and 10 for lack of sufficient supporting documentation. Each claim and supporting documents are evaluated below.

Claim 5 of Advantage Assets

Advantage filed its proof of claim on Official Form 10; included with the claim is a screen shot from LTD Financial Services. Trustee's Ex. 6. There is no copy of any assignment from LTD Financial Services to Advantage Assets, Inc. Trustee's Ex. 6. There is no copy of an assignment from MBNA , which the trustee believes to be the original creditor, to LTD Financial Services. Trustee's Ex. 6. Nonetheless, on the debtors' Schedule F, the debtors listed MBNA and indicated that the account was charged off. Trustee's Ex. 12, Continuation Sheet 6. Furthermore, the debtors listed LTD Financial Services on Schedule F Continuation Sheet No. 5, indicating that LTD Financial was collecting for MBNA. Trustee's Ex. 12. The address listed for

LTD Financial on debtors' schedules is the same address for Advantage Assets, Inc. *Compare* Trustee's Ex. 12 *with* Trustee's Ex. 6. The claim does not, however, contain a copy of an assignment from MBNA to either LTD Financial Services or Advantage Assets, Inc. The claim should be disallowed. *See White*, 2008 WL 269897, at *6.

<u>Claim 6 of Worldwide</u>

Worldwide filed its claim on Official Form 10; included with the claim are a Declaration of Mary Beth Corcoran, a screenshot from Worldwide Assets Purchasing, an account statement from Worldwide Asset Purchasing, and two bills of sale. Trustee's Ex. 7. One of the bills of sale transfers accounts from MBNA, a scheduled creditor, to CACV of Colorado, LLC. Trustee's Ex. 7. The second bill of sale transfers accounts from CACV of Colorado, LLC to Worldwide Asset Purchasing, LLC. Trustee's Ex. 7. The account number on the attached account statement is the same as the account number listed by debtors on their schedules. Trustee's Ex. 7 & 12. The documents therefore establish a link between the claimant and the scheduled creditor. *See In re Rochester*, 2005 WL 3670877, at *6. Therefore, Claim 6 is accorded prima facie validity. *See id.*

<u>Claim 7 of Worldwide</u>

Claim 7, like claim 6, contains a Declaration of Mary Beth Corcoran, a screenshot from Worldwide Asset Purchasing, an account statement from Worldwide Asset Purchasing, and two bills of sale. Trustee's Ex. 8. The bills of sale reflect that MBNA sold accounts to CACV of Colorado, who in turn sold accounts to Worldwide Asset Purchasing. Trustee's Ex. 8. Nonetheless, the account number listed on the claim does not match any account number listed by the debtors on their schedules associated with MBNA . Trustee's Ex. 8 & 12. In fact, matching the last four digits of the account number on the proof of claim with an account

number on the debtors' schedules leads to the reasonable conclusion that the original creditor is Monogram Bank of America. Trustee's Ex. 12, Continuation Sheet No. 7. Furthermore, based on the debtors' schedules, the party collecting the debt associated with account number 7449 is Gerald E. Moore & Associates Trustee's Ex. 12, Continuation Sheet No. 4. Therefore, the documents filed with the proof of claim 7 do not reasonably allow for the debtor to match the assignee-creditor to a scheduled creditor. *See In re Rochester*, 2005 WL 3670877, at *7. Claim 7 is not accorded prima facie validity and is disallowed. *See id.*

<u>Claims 8, 9, and 10 of PRA Receivables</u>

Claims 8, 9 and 10 are supported only by account summaries and not with documentation of either the base claim or the assignment or transfer of the claim. Trustee's Ex. 9-11. Information on the account summaries include the bankruptcy case number and when it was filed, debtor information, creditor information, and account information. Trustee's Ex. 9-11. While the account summaries state from whom PRA Receivables Management purchased the claims, they are not documents evidencing the assignment. Trustee's Ex. 9-11. Indeed, the proofs of claim do not include documentation of the claim itself. Claim numbers 8, 9, and 10 are disallowed. *See White*, 2008 WL 269897 at *6.

**Conclusion**

The debtors have standing to pursue their claim objections. *See In re Morgan*, 2007 WL 2669341, at *4. The estate has a single asset which is valued at approximately $170,000. The unsecured claims on file, including claims filed after the bar date, are in the aggregate sum of $126,350.02. There is, therefore, a likelihood of a surplus, with the debtors thereby retaining a pecuniary interest in the estate. *See id.* The objections to claim 5 of Advantage, claim 7 of

Worldwide, and claims 8, 9, and 10 of PRA Receivables will be sustained as the documentation included with such claims fails to establish the prima facie validity of the claims. *See In re White*, 2008 WL 269897, at *6. The objection to claim 6 of Worldwide will be denied.

### End of Memorandum Opinion ###